UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE No. 1:17-cv-23942-WILLIAMS/TORRES

MONTEL WILLIAMS and MONTEL WILLIAMS
ENTERPRISES, INC.,

                Plaintiffs,

  v.

ADVANCEABLE TECHNOLOGY, LLC; BEAUTY
STRONG, LLC (f/k/a HATHOR SECRETS, LLC f/k/a
SECRETS OF ISIS, LLC); SNOWFLAKE
MARKETING LLC; TIMOTHY ISAAC; AND DOES
and ABC COMPANIES 1-100 inclusive,

                Defendants.

## MONTEL WILLIAMS AND MONTEL WILLIAMS ENTERPRISES, INC.'S MOTION FOR LIMITED, EXPEDITED NON-PARTY DISCOVERY

Plaintiffs Montel Williams ("Williams") and Montel Williams Enterprises, Inc. ("MWE" and collectively the "Plaintiffs"), by and through their attorneys, Saul Ewing Arnstein & Lehr and Davis & Gilbert LLP, move pursuant to Fed. R. Civ. P. 26(d) for entry of an Order permitting Plaintiffs to serve discovery subpoenas directed to certain non-parties likely to have information relevant to the identities of the Doe and ABC Company Defendants in this action (the "Action") prior to the parties' Fed. R. Civ. P. 26(f) scheduling conference.

### PRELIMINARY STATEMENT

As set forth in their complaint (the "Complaint"), Plaintiffs have alleged that numerous entities and individuals, including Advanceable Technology, LLC, Beauty Strong, LLC, Snowflake Marketing LLC, and Timothy Isaac ("Isaac" and collectively the "Named Defendants") have infringed Plaintiffs' right of publicity and trademarks in order to defraud

1

consumers into buying purported cannabidiol oils ("CBD Oil") that Plaintiffs never used or endorsed.  In addition to making allegations against the Named Defendants, Plaintiffs have also named Does and ABC Companies 1-100 as Defendants(the "Unknown Defendants").  As alleged in the Complaint, Plaintiffs have received complaints from consumers about, and have themselves personally reviewed, other websites that are using Plaintiffs' identity and property to sell CBD Oils.  However, the individuals or entities that run those websites have taken steps to hide their identities.  Accordingly, Plaintiffs were forced to name them as Unknown Defendants.

For the reasons stated herein, Plaintiffs have good cause for expedited non-party discovery.  First, it will increase the efficiency of this case by ensuring that all parties involved in the unlawful use of Plaintiffs' identity and intellectual property are involved in this Action at the earliest possible stage, saving time and resources of the parties and the Court.  Second, based on the steps that the Unknown Defendants have already taken to conceal their identities, Plaintiffs have reason to believe that if the requested non-party discovery does not occur immediately, the Unknown Defendants will take further steps to shield their true identities in order to prevent Plaintiffs from naming them in an amended complaint.  Finally, expedited discovery of the non-parties will help Plaintiffs more quickly end the ongoing harm resulting from the infringement of their property and intellectual property.  Accordingly, Plaintiffs seek permission to serve subpoenas directed to Internet Domain Service BS Corp., NameCheap Inc., Domain Protection Services, Inc., WhoisGuard, Inc., Whois Privacy Corp., Name.com, LLC, Name.com, Inc., Contact Privacy Inc., eNom, Inc., Google, Inc., Facebook, Inc., Common Sense Beauty, LLC, and The Affiliati Network, Inc. ("Affiliati" and collectively the "Non-Parties") now, prior to the parties' Rule 26(f) scheduling conference, which is not yet set.  Based on communications with counsel for the Named Defendants, the Rule 26(f) conference will likely not occur until mid-

December at the earliest, as Defendants' Arizona counsel has requested an extension of time to respond to the Complaint and has indicated that he may need to engage local Florida counsel and will not be in a position to discuss discovery until he does so.

## FACTS

Plaintiffs filed their Complaint on October 27, 2017.  (*See* Dkt. 1.)  In the Complaint, Plaintiffs allege that numerous entities are willfully and unlawfully using Plaintiffs' identity and intellectual property to market and sell purported CBD Oils to consumers.  (*See id.* at ¶ 3.) Specifically, the Complaint alleges that the Defendants are selling, supplying, importing, and/or marketing products (the "Infringing Products") using advertisements and fake news that suggest that the Infringing Products have been recommended, created, or otherwise endorsed by Williams (the "Unlawful Marketing").  (*See, e.g.*, *id.* at ¶¶ 26-34.)

Based on the foregoing misuse of Plaintiffs' identity and intellectual property, the Complaint alleges that both the Plaintiffs and the consuming public have been, and continue to be, harmed.  As alleged in the Complaint, numerous consumers, many of whom are already suffering from serious medical conditions such as leukemia, Alzheimer's, and fibromyalgia, have made complaints about unlawful credit card charges by Defendants, the failure to receive any products after making a purchase, and the quality of the goods they received.  (*See id.* at ¶ 43.) Additionally, Plaintiffs' reputations have been, and continue to be, harmed by the Unlawful Marketing.  (*See id.* at ¶ 41.)  For example, because Defendants are claiming that Plaintiffs endorsed, created, or are otherwise affiliated with the Infringing Products, Williams has already received dozens of complaints from defrauded consumers that believed he was responsible for the problems they have had with the Infringing Products.  (*See id.*)

In addition to the Named Defendants, Plaintiffs have received consumer complaints about additional entities and websites that are infringing on Plaintiffs' identity and intellectual property. (*See id.* at ¶ 16.) In the Complaint, Plaintiffs have identified at least twelve websites about whom Plaintiffs have received complaints or on which Plaintiffs found Unlawful Marketing. (*See id.*) In addition to those websites, Plaintiffs have also received complaints from consumers about advertisements using Plaintiffs' identity and intellectual property that were placed on Facebook.com. (*See* Declaration of Marc J. Rachman (hereinafter "Rachman Decl.") at ¶ 10.) Plaintiffs were unable to name as Named Defendants the entities or individuals responsible for those websites and advertisements. (*See* Dkt. 1 at ¶¶ 16-17.) The Unknown Defendants that operate these websites and run these advertisements, and others, have deliberately made themselves difficult to detect by failing to disclose their contact information, by listing false company information, by using proxies who keep their identity private, by obscuring their proper names and/or by changing their names, or by acting in concert in some other manner and/or as alter egos of each other which make them difficult to distinguish. (*See id.* at ¶¶ 16-17, 38.)

Since filing their Complaint, Plaintiffs have obtained information about several Non-Parties that are likely to have information about the Unknown Defendants. On October 30, 2017 co-counsel for Plaintiffs spoke with an individual (hereinafter "Mr. Hipes") who identified himself as the owner of RootsRevive.com. (*See* Rachman Decl. at ¶ 4.) RootsRevive.com is one of the websites identified as a potential Unknown Defendant in the Complaint. (*See* Dkt. 1 at ¶ 16.) During our conversation, Mr. Hipes explained that RootsRevive.com used an affiliate ad network called Affiliati. (*See* Rachman Decl. at ¶ 5.) Mr. Hipes further explained that one of

4

Affiliati's sub-affiliates was using Plaintiffs' identity and intellectual property. (*See id.* at ¶ 6) Mr. Hipes did not disclose the identity of that sub-affiliate. (*See id.*)

Shortly thereafter, on November 2, 2017, the Phoenix New Times published an article about this Action that contained an interview with one of the Named Defendants, Isaac. (*See id.* at Ex. A.) In that interview, Isaac confirmed his companies "sell[] [] products by accepting referrals from the 'affiliates' who make the ads." (*Id.*; *see also id.*at ¶ 7.) In the same interview Isaac confirmed that one of the affiliates he was previously using was an "affiliate who was 'doing Montel Williams' ads." (*Id.*) Isaac did not identify that affiliate in the article. (*See id.*) Based on a recent lawsuit filed in United States District Court for the Southern District of Florida, Miami Division, Plaintiffs have reason to believe the network identified by Isaac in the Phoenix New Times article was Affliati. (*See* Rachman Decl. at ¶ 8; *see also The Affiliati Network, Inc. v. Common Sense Beauty, LLC & Timothy K. Isaac*, 1:17-cv-24054-JEM.) In that same lawsuit, Affiliati named another of Isaac's companies called Common Sense Beauty, LLC, and claimed that the company was using Affiliati's marketing and advertising services to generate and drive online sales. (*See id.*)

In addition to Affiliati, Plaintiffs have identified several Non-Party entities that the Unknown Defendants appear to be using to hide their identities. (*See* Rachman Decl. at ¶ 3.)

## ARGUMENT

### I.   LEGAL STANDARD

Pursuant to Rule 26(d), a court may order discovery to commence before the parties have engaged in a discovery conference. *See* Fed. R. Civ. P. 26(d)(1). District courts are afforded broad discretion in the scheduling of discovery. *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1269 (11th Cir. 2001). Indeed, a district court's discovery scheduling orders will be reversed "only

5

where they are arbitrary or clearly unreasonable." *TracFone Wireless, Inc. v. Adams*, 304 F.R.D. 672, 673 (S.D. Fla. 2015) (internal quotations and citation omitted).

"Federal courts allow parties to conduct expedited discovery in advance of a Rule 26(f) conference where the party establishes 'good cause' for such discovery." *Id.* "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *See id.* (internal quotations and citation omitted).

Courts in this Circuit have often found that "good cause" exists for expedited non-party discovery in cases of ongoing infringement that may cause additional harm to a plaintiff. *See, e.g.*, *id.*; *see also United States v. Mayer*, 8:03-CV-415-T-26TGW, 2003 U.S. Dist. LEXIS 9416 (M.D. Fla. Mar. 20, 2003) (ordering expedited civil discovery due to the risk of irreparable injury). Additionally, courts in this Circuit also routinely find "good cause" for expedited discovery on non-parties in order to determine the identities of Doe defendants. *See Malibu Media, LLC v. Doe*, 13-81247-CIV-COHN/SELTZER, 2013 U.S. Dist. LEXIS 195801, at *3 (S.D. Fla. Dec. 10, 2013) (granting expedited discovery on internet service provider to allow defendant to determine the true identity of Doe defendant); *Doe v. Dominique*, 1:13-CV-04270-HLM, 2014 U.S. Dist. LEXIS 189153, at *11 (N.D. Ga. Jan. 3, 2014) ("The Court accepts Plaintiff's statement that [] for some of the John Doe Defendants if not all, identifying the true identities of these Defendants may be extremely difficult, if not impossible, without Plaintiff taking third-party discovery. An individual or entity publishing defamatory materials on the internet should not be given more protection than a traditional ink and paper publisher simply because it is difficult to track the publisher down without assistance from a third party."). Finally, courts also often grant orders expediting discovery where evidence might be lost with

the passage of time. *See Doe*, 2014 U.S. Dist. LEXIS 189153, at *10 ("Expedited discovery may also be appropriate in cases where physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation.").

In this Action, there is a danger of ongoing harm to Plaintiffs absent the requested Non-Party discovery, Plaintiffs need the discovery to determine the identity of the Unknown Defendants, and there is also a danger of the Unknown Defendants taking additional steps to shield their identities. Contrarily, there is no prejudice to the Defendants from the requested, limited Non-Party discovery; accordingly, Plaintiff has established good cause for limited expedited discovery.

## II. PLAINTIFFS HAVE GOOD CAUSE FOR CONDUCTING EXPEDITED NON-PARTY DISCOVERY

Good cause exists in this Action for expedited discovery. First, as alleged in the Complaint, Defendants' Unlawful Marketing uses the Plaintiffs' identity and intellectual property to scam consumers. (*See, e.g.*, Dkt. 1 at ¶¶ 4-7.) Numerous consumers have already complained to Williams because they believed that he was associated with these scams. (*See id.* at ¶ 41.) Plaintiffs have no reason to believe that Defendants have ceased all of their Unlawful Marketing efforts, although many of the websites referenced in the Complaint are no longer active. Without the requested Non-Party discovery, Plaintiffs will be delayed in naming the additional entities responsible the Unlawful Marketing, and therefore be further delayed in ending this damaging infringement. This alone is sufficient to establish "good cause" for expedited discovery. *See TracFone Wireless, Inc.*, 304 F.R.D. at 673; *Mayer*, 2003 U.S. Dist. LEXIS 9416.

Additionally, Plaintiffs have determined that numerous Unknown Defendants are using Non-Party entities to hide their identities. (*See* Rachman Decl. at ¶ 3.) Expedited discovery of

the Non-Parties is necessary to identify these Unknown Defendants. Similarly, Plaintiffs have received information that a sub-affiliate of Affiliati may be responsible for some of the Unlawful Marketing at issue in this Action and that Unlawful Marketing was being placed on Facebook.com . (*See id.* at ¶¶ 4-6.) Expedited discovery is necessary to identify this sub-affiliate and the entities that were placing ads on Facebook.com. Accordingly, "good cause" also exists because expedited discovery is necessary to identify numerous Unknown Defendants. *Malibu Media, LLC*, 2013 U.S. Dist. LEXIS 195801, at *2.

Further, many of the Unknown Defendants are already taking steps to hide their identities. (*See* Rachman Decl. at ¶¶ 2-3.) Now that Plaintiffs have filed a Complaint bringing Defendants' unlawful infringements to light, Plaintiffs have a real concern that, given additional time, the Unknown Defendants will engage in further attempts to hide, such as changing their names or creating new infringing websites. This would make it substantially more difficult for Plaintiffs to identify these Unknown Defendants.

Finally, there is no prejudice to Defendants from the limited expedited discovery of the Non-Parties. To the contrary, this discovery will actually increase the efficiency of this action. It will ensure that all of the appropriate parties, including those with whom one of the Named Defendants has already admitted affiliation, are added to this Action and involved in scheduling and discovery planning at an early stage. This will prevent the Court and parties from wasting resources on, among other things, repeated: amendments to the Complaint, scheduling conferences, and/or dispositive motions. On several occasions, Counsel for Plaintiffs has sought the consent of the Named Defendants for this motion, but thus far the Named Defendants have not indicated whether they consent or oppose this motion. (*See* Rachman Decl. at ¶ 9.)

## **CONCLUSION**

For the reasons stated herein, Plaintiffs respectfully request that the Court grant their request for expedited discovery of the Non-Parties for the limited purpose of determining the identities of the Unknown Defendants.

Dated: Miami, Florida
November 22, 2017

By: /s/ Franklin L. Zemel

Franklin L. Zemel, Esq.
Florida Bar No. 816620
SAUL EWING ARNSTEIN & LEHR LLP
200 E. Las Olas Blvd., Suite 1000
Fort Lauderdale, FL 33301
Tel: (954) 713-7610
Fax: (954) 713-7710

Of Counsel:

DAVIS & GILBERT LLP
Marc J. Rachman (mrachman@dglaw.com)
(admitted *pro hac vice*)
Joshua Podolnick (jpodolnick@dglaw.com)
(admitted *pro hac vice*)
1740 Broadway
New York, New York 10019
(212) 468-4890

*Attorneys for Plaintiffs*