UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MONTEL WILLIAMS and MONTEL WILLIAMS ENTERPRISES, INC., | Case No. 1:17-cv-23942-KMW |
| Plaintiffs, | **AMENDED COMPLAINT** |
| v. | **Plaintiffs Demand A Trial By Jury** |
| ADVANCEABLE TECHNOLOGY, LLC; BEAUTY STRONG, LLC (f/k/a HATHOR SECRETS, LLC f/k/a SECRETS OF ISIS, LLC); SNOWFLAKE MARKETING LLC; COMMON SENSE BEAUTY, LLC; HGK GLOBAL MEDIA LLC; TIMOTHY ISAAC; AND DOES and ABC COMPANIES 1-100 inclusive, | |
| Defendants. | |

Plaintiffs Montel Williams ("Williams") and Montel Williams Enterprises, Inc. ("Montel Enterprises" and collectively the "Plaintiffs") by and through their undersigned attorneys, for their Amended Complaint against the defendants named in this action and described below (collectively referred to herein as the "Defendants") allege as follows:

## NATURE OF ACTION

1.      This is an action about unscrupulous businesses blatantly infringing the celebrity Montel Williams' identity, and the related trademarks of Plaintiffs, in online scams that are deceiving consumers.  Plaintiffs bring this action seeking injunctive relief and damages for the Defendants' deceptive practices, which have harmed Plaintiffs, as well as numerous consumers who have been and are being injured by Defendants' conduct.

2.      Plaintiff Montel Williams is an award-winning media personality, who hosted an Emmy-winning talk show for nearly seventeen years, and has acted in numerous plays, television programs, and movies.  A trademark in Williams' name is held by Plaintiff Montel Enterprises.

In 2000, Williams was diagnosed with multiple sclerosis ("MS").  Williams found that pharmaceuticals were ineffective at treating his symptoms from MS, so one of his doctors recommended medical cannabis.  Finding medical cannabis to be effective at treating his symptoms, Williams began advocating for medical cannabis law reform and founded a related company called LenitivLabs by Lenitiv ("Lenitiv").  Notably, Lenitiv's website warns consumers that "[t]he legal cannabis industry is laden with non-medical brands and products . . . ."[1]  Similarly, in a recent article in Forbes (the "Forbes Article"), Williams warned about medical cannabis companies that "don't do the research" and whose products you would not call medicine.[2]  Unfortunately, hoping to capitalize on the exposure generated by the Forbes Article, numerous unscrupulous entities began attempting to scam consumers by, among other things, selling those "non-medical brands and products" using, without authorization, Plaintiffs' valuable reputation and marks to deceive consumers into believing that Williams endorsed and/or was associated with their products.

3.      Defendants comprise numerous entities involved in one or more online marketing schemes related to purported cannabidiol oils ("CBD Oil")[3].  Specifically, Defendants are the sellers, suppliers, importers, and/or marketers of products that claim to be CBD Oils purportedly for medical use (collectively the "Infringing Products"), and who are willfully and unlawfully using Plaintiffs' identity and intellectual property.  These Infringing Products include, but are not limited to, purported CBD Oils called: Revive CBD Oil, Natural Pure CBD, CBD-RXP, Pure Isolate CBD, Pure Med CBD, Pure Natural CBD Oil, TrueMed Hemp oil, Hemptif CBD,

---

[1] *See* http://www.lenitivlabs.com/about-us/ (last visited Oct. 2, 2017).

[2] *See* Janet Burns, *For the Past 17 Years, Montel Williams Did What the FDA Won't: He Made Weed a Medicine*, Forbes, Apr. 20, 2017 (available at https://www.forbes.com/sites/janetwburns/2017/04/20/for-17-years-montel-williams-has-been-perfecting-his-cannabis-line-now-its-ready/#960b44e792d1).

[3] Notably, many consumers who have purchased these infringing products claim that the oil they received was not actually CBD Oil.  *See, e.g.*, http://www.ripoffreport.com/reports/advanceable-technologies-llc/scottsdale-arizona-85254/advanceable-technologies-llc-ripped-me-off-for-a-product-that-isnt-what-they-advertise-1402769 (noting that "the purported CBD oil is in fact, vegetable oil.") (last visited on Jan. 23, 2018).

Assured CBD Oil, Sky CBD, Cell Isolate CBD Hemp Oil, Pure CBEED, E-Oil, and Emblha LLC CBD Oils.

4.      The Defendants are knowingly and willfully capitalizing on Plaintiffs' valuable reputation and intellectual property to lure consumers into ordering their Infringing Products on the false premise that they have been tested, created, or recommended by Williams, when they have not.  Defendants are using and/or working with others who are using deceptive marketing materials that contain fabricated quotes or falsely purport to speak in Williams' voice about specific brands and products that he has never endorsed.

5.      Defendants' conduct has injured Williams' reputation.  Plaintiffs seek to stop the unauthorized and unlawful use of Williams' name, picture, identity, and trademark in connection with Defendants' marketing and sales of, or offers to sell, the Infringing Products.

6.      Upon information and belief, many of Defendants' offers are in fact credit card scams or other fraudulent schemes by which Defendants (a) charge customers despite advertising that the Infringing Products are available for a "free trial" and often refuse to adequately disclose any mechanism for customers to cancel the ongoing charges; (b) fail to fulfill orders despite charging consumers; or (c) charge consumers for monthly subscriptions of Infringing Products without the consumers having knowingly signed up for any such subscription.

7.      Moreover, Defendants' conduct also raises serious public health and safety concerns because many, if not all, of the Defendants are marketing the Infringing Products as a means to cure, mitigate, treat or prevent diseases, illnesses, or serious conditions.  Such marketing messages are, upon information and belief, untrue health claims, which Defendants falsely attribute to Williams.  Defendants' actions are particularly appalling because many of customers being defrauded by Defendants are purchasing the Infringing Products based on these

untrue health claims in order to treat symptoms associated with serious medical conditions such as leukemia, Alzheimer's, and fibromyalgia.

8.      Defendants are using Williams' reputation and infringing upon Plaintiffs' rights despite repeated requests that they cease and desist from such use.

9.      Plaintiffs seek injunctive relief; damages, including exemplary and punitive damages; and attorney's fees under various causes of action, for false advertising and false endorsement, sponsorship, or affiliation under Section 43(a) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §§ 1125 and 1116-1118; violation of Williams' statutory rights of privacy and publicity under Florida Statute § 540.08 and under Florida common law; and violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et. seq.*

## THE PARTIES

10.     Plaintiff Williams is an individual who is an award-winning media personality and is the founder of Lenitiv.  At all times relevant to this action, Williams was a resident of Miami, Florida.

11.     Plaintiff Montel Enterprises is a Delaware corporation with a principal place of business at 1395 Brickell Avenue, Suite 800, Miami, FL 33131.  Montel Enterprises is the holder of the trademark "Montel Williams."

12.     Upon information and belief, Defendant Advanceable Technology, LLC ("Advanceable") is an Arizona limited liability company with a principal place of business at 6501 E Greenway Pkwy, Scottsdale, Arizona 85254.  Upon information and belief, Advanceable is a seller of several of the Infringing Products at issue, which are subject to numerous consumer complaints.  Indeed, Williams and his company Lenitiv have received specific complaints from consumers identifying Advanceable as an entity using Williams' image and intellectual property

and from which they purchased Infringing Products.  Upon information and belief, Advanceable is aware of, encouraging, or directing, or otherwise consenting to advertising that violates Plaintiffs' rights and trademarks.  In the alternative, upon information and belief, Advanceable has reason to suspect, but is intentionally shielding itself from, information that would have made it aware that its advertising violates Plaintiffs' rights and trademarks.  In addition to violating Plaintiffs' rights and trademarks, Advanceable's participation in the deceptive advertising for the Infringing Products has caused numerous consumers to complain of credit card fraud and other deceptive practices by Advanceable in connection with its sale of these Infringing Products.[4]  Advanceable is doing and transacting business within the State of Florida and this judicial district, by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and its affiliate marketers, and shipping its Infringing Products to Florida.[5]

13.    Upon information and belief, Defendant Beauty Strong, LLC (f/k/a Hathor Secrets, LLC f/k/a Secrets of Isis, LLC) ("Beauty") is an Arizona LLC with a principal place of business at 6501 E Greenway Pkwy, Scottsdale, Arizona 85254, the same principal place of business as Advanceable.  Upon information and belief, Beauty is a seller of several of the Infringing Products at issue, which are subject to numerous consumer complaints, including complaints made directly to Lenitiv.  Upon information and belief, Beauty is aware of, encouraging, or directing, or otherwise consents, to affiliate marketing that violates Plaintiffs' rights and trademarks.  In the alternative, upon information and belief, Beauty has reason to

---

[4] *See, e.g.*, http://www.ripoffreport.com/reports/specific_search/advanceable%20technologies (last visited January 22, 2018).

[5]    *See,    e.g.*,    http://www.ripoffreport.com/reports/advanceable-technologies-scotsdale-az/scottsdale-az-85254/advanceable-technologies-scotsdale-az-the-company-said-that-it-would-be-a-free-sample-b-1402011 (Customer from Orlando, Florida complaining that Advanceable said he would receive a free trial but charged him $69.99 and did not provide him any mechanism to cancel the trial).

suspect, but is intentionally shielding itself from, information that would have made it aware that its advertising violates Plaintiffs' rights and trademarks. Upon information and belief, Beauty is doing and transacting business within the State of Florida and this judicial district, by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and its affiliate marketers, and shipping its Infringing Products to Florida.

14. Upon information and belief, Defendant Snowflake Marketing LLC ("Snowflake") is an Arizona LLC with a principal place of business at 10456 N 74th St. Ste 805, Scottsdale, Arizona 85258. Notably, the address of Snowflake's statutory agent for service, Defendant HGK Global Media LLC, is located at 6501 E Greenway Pkwy, Scottsdale, Arizona 85254, the same address as the principal place of business of Advanceable and Beauty. Upon information and belief, Snowflake is marketing or selling several of the Infringing Products at issue, which are subject to numerous consumer complaints. Indeed, Williams and his company Lenitiv have received specific complaints from consumers identifying Snowflake as an entity using Williams' image and intellectual property and from which they purchased Infringing Products. Upon information and belief, Snowflake is aware of, encouraging, or directing, or otherwise consents, to affiliate marketing that violates Plaintiffs' rights and trademarks. In the alternative, upon information and belief, Snowflake has reason to suspect, but is intentionally shielding itself from, information that would have made it aware that its advertising violates Plaintiffs' rights and trademarks. Upon information and belief, Snowflake is doing and transacting business within the State of Florida and this judicial district, by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and its affiliate marketers, and shipping its Infringing Products to Florida.

15.     Upon information and belief, HGK Global Media LLC ("HGK") is an Arizona LLC with a principal place of business at 6501 E Greenway Pkwy, Scottsdale, Arizona 85254, the same principal place of business as Advanceable and Beauty.  Upon information and belief, HGK is a seller of several of the Infringing Products at issue.  Upon information and belief, HGK is also selling Infringing Products under pseudonyms, including Emblha LLC.[6]  Williams and Lenitiv have received several consumer complaints regarding Emblha LLC CBD Oils, which complaints indicate that Williams' image, name, and intellectual property are being used to advertise the Infringing Products.  Upon information and belief, HGK is aware of, encouraging, or directing, or otherwise consents, to affiliate marketing that violates Plaintiffs' rights and trademarks.  In the alternative, upon information and belief, HGK has reason to suspect, but is intentionally shielding itself from, information that would have made it aware that its advertising violates Plaintiffs' rights and trademarks.  Upon information and belief, HGK is doing and transacting business within the State of Florida and this judicial district, by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and its affiliate marketers, and shipping its Infringing Products to Florida.

16.     Upon information and belief, Common Sense Beauty, LLC ("Common Sense") is an Arizona LLC with a principal place of business at 6501 E Greenway Pkwy, Scottsdale, Arizona 85254, the same principal place of business as Advanceable, Beauty, and HGK.  Upon information and belief, Common Sense is a seller of several of the Infringing Products at issue. Upon information and belief, Common Sense is aware of, encouraging, or directing, or otherwise consents, to affiliate marketing that violates Plaintiffs' rights and trademarks.  In the alternative, upon information and belief, Common Sense has reason to suspect, but is intentionally shielding

---

[6] HGK is the registrant for Emblha.com, a website that sold the Infringing Products.  A copy of http://www.emblha.com/v1/desktop/?aff_id=&sub_id=&req_id= (last visited October 24, 2017) is attached hereto as Exhibit E.

itself from, information that would have made it aware that its advertising violates Plaintiffs' rights and trademarks.  Indeed, in a related lawsuit (*Affiliati v. Timothy K. Isaac and Common Sense Beauty, LLC*, 1:17-CV-24054 (S.D. Fla.)), Common Sense and Timothy Isaac ("Isaac") assert that they have evidence that their affiliate marketer was "using unauthorized celebrity likenesses in order to obtain sales leads for [Common Sense]."  As described in that related case, at least one of the affiliate marketers engaged by Common Sense is located in the State of Florida and this judicial district.  Accordingly, and upon information and belief, Common Sense is doing and transacting business within the State of Florida and this judicial district, by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and its affiliate marketers, and shipping its Infringing Products to Florida.

17.    Notably, the Better Business Bureau lists Beauty Strong, Advancable, and HGK as "alternative business names" of Common Sense.[7]

18.    Upon information and belief, Defendant Isaac is a member and/or manager of Defendants Snowflake, Beauty, Advancable, HGK, and Common Sense.  Upon information and belief, Isaac is a resident of Arizona.  Upon information and belief, Isaac is aware of, encouraging, or directing, or otherwise consents, to affiliate marketing that violates Plaintiffs' rights and trademarks.  In the alternative, upon information and belief, Isaac has reason to suspect, but is intentionally shielding himself from, information that would have made him aware that he and his LLCs were using advertising that violates Plaintiffs' rights and trademarks. Upon information and belief, Isaac, through his LLCs, is doing and transacting business within the State of Florida and this judicial district, by marketing, selling and/or offering for sale the

---

[7] https://www.bbb.org/phoenix/business-reviews/beauty-supplies/common-sense-beauty-llc-in-scottsdale-az-1000036217/reviews-and-complaints (last visited January 26, 2018).

Infringing Products via interactive websites and affiliate marketers, and is shipping Infringing Products to Florida.

19.     Upon information and belief, Defendants Does and ABC Companies 1-100 (collectively the "Unknown Defendants") are sellers, affiliates, marketers, suppliers, manufacturers and/or importers of certain of the Infringing Products via numerous of websites, including but not limited to advanceabletechnology.com[8], piop.net[9], bonnyin.com[10], selectsecurehealth.com[11], rootsrevive.com[12], purecbdstrain.com/[13], easy-essentials-recipes.com/cbd/abc1/[14], donationcycle.net[15], skycbd.org/[16], medpurecbd.com/[17], organixcbd.net[18], gymdiet101.com[19], and trailerparkfitness.com[20].  These Unknown Defendants have taken steps to keep their real identity from being discovered by, upon information and belief, using fictitious names[21] and addresses and using proxies to register their domain names who have agreed to keep their identity private.

---

[8] *See, e.g.*, https://advanceabletechnology.com/cbeed/v2/?aff_id=3279&sub_id=39&req_id=156094748 (last visited October 24, 2017) (Attached hereto as Exhibit A).

[9] https://www.piop.net/montel-williams-cbd-oil-medicinal-cannabis-lenitivlabs-forbes/ (last visited October 24, 2017) (Attached hereto as Exhibit B).

[10] bonnyin.com/beauty/tips/real-ping-2/index-35.php (last visited October 9, 2017) (Attached hereto as Exhibit C).

[11] https://www.selectsecurehealth.com/rvve/cbd/?AFFID=9&C1=4036&C2=mwill&C3=&C4=&click_id=17341355 (last visited October 24, 2017) (Attached hereto as Exhibit D).

[12] https://rootsrevive.com/offer/v2/?AFFID=affiliati&C1=3561&C2=skycbdTS&C3=162617925 (last visited October 24, 2017) (Attached hereto as Exhibit F).

[13] https://purecbdstrain.com/lim-p-i-f2/home?AFID=212423&C1=370231&C2=84768913 (last visited October 24, 2017) (Attached hereto as Exhibit G).

[14] http://www.easy-essentials-recipes.com/cbd/abc1/ (last visited October 24, 2017) (Attached hereto Exhibit H).

[15] https://donationcycle.net/lifestylenewsreport.com/abc/revive-cbd/ (last visited October 24, 2017) (Attached hereto as Exhibit I).

[16] http://skycbd.org/ (last visited October 24, 2017) (Attached hereto Exhibit J).

[17] http://medpurecbd.com/ (last visited October 24, 2017) (Attached hereto as Exhibit K).

[18] organixcbd.net (last visited October 24, 2017) (Attached hereto as Exhibit L).

[19] http://gymdiet101.com/?ad=PINKY55-64 (screenshot as of December 1, 2017 attached hereto as Exhibit M). This advertisement links to a sales page at https://liveyourhealthlife.com/mob-p-i-f2-v2/home?AFID=1520&C1=Facebook&C2=dUlF5MKAG7IBJS2AHSB2363O (screenshot as of December 4, 2017 is attached hereto as Exhibit N), which was selling Pure Med CBD.

[20] http://trailerparkfitness.com/?ad=55-64mt (partial screenshot as of November 27, 2017 is attached hereto as Exhibit O).  This advertisement links to a sales page at https://puresativacbd.com/splash/home (screenshot as of November 27, 2017 is attached hereto as Exhibit P), which was selling Natural Pure CBD.

[21] Examples of the fictitious names include Emblha LLC (which, upon information and belief, is a pseudonym used by defendant HGK), Med Pure CBD, Sky CBD, and Sky Oil LLC.

20.     Plaintiffs are currently ignorant of the true names and capacities of the Unknown Defendants sued herein as Does and ABC Companies 1 through 100, inclusive, and therefore sue these Unknown Defendants by such fictitious names.  Plaintiffs have identified numerous web sites selling and/or marketing the Infringing Products, and will amend this Complaint to allege their true names and capacities when ascertained.  Upon information and belief, the Unknown Defendants include individuals and corporations.

21.     Upon information and belief, at all times all Defendants were the principals, agents, affiliates, partners, alter-egos, co-conspirators, and/or are acting in concert with each other, and each acted within the course, scope and authority of such relationships so that, as a result, all Defendants are jointly and severally liable for the acts alleged in this Amended Complaint.  This belief is based, in part, on the facts that some or all of the Defendants:  (a) have identical or similar websites, (b) are using the same language and images on their websites, (c) link or redirect visitors to the same websites, and (d) market and/or sell the same Infringing Products manufactured by the same manufacturer.[22]

## JURISDICTION AND VENUE

22.     This action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq*.  This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338 and 28 U.S.C. § 1367(a), because this action arises under the laws of the United States, and this Court has supplemental jurisdiction over related state law claims.

23.     The Court has personal jurisdiction over the Defendants based on Florida Statute §§ 48.193(1)(a) (2) & (6) because Defendants are committing tortious acts and causing injuries to Plaintiff and others within the State of Florida by marketing, selling and/or offering for sale

---

[22] *Compare* Exhibit B *with* Exhibit C; *Compare* Exhibit H *with* Exhibit I; *Compare* Exhibit A *with* Exhibit D *and* Exhibit E *and* Exhibit F *and* Exhibit G.

the Infringing Products via their interactive websites and their affiliate marketers, and shipping the Infringing Products to Florida. Indeed, Common Sense and Isaac engaged an affiliate marketer in this judicial district that Common Sense and Isaac assert in the related case described herein was using "unauthorized celebrity likenesses in order to obtain sales leads for [Common Sense]." Further, Plaintiff Williams has been injured in Florida. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants are subject to personal jurisdiction in this district, Defendants' tortious conduct occurred in this district, and Plaintiff resides and was injured in this district.

## FACTUAL ALLEGATIONS

**Williams Has Obtained Valuable Rights in His Name, Picture, Identity, and Trademarks**

24.     As a result of the investment of considerable time, effort and expense, Williams has developed valuable rights in his name, picture, voice, identity, persona, reputation, and trademarks.

25.     Beginning in 1991, Williams hosted a talk show titled "The Montel Williams Show." In 1996, Williams won a Daytime Emmy Award for Outstanding Talk Show Host. Both he and his show were nominated for and received numerous other awards. The Montel Williams Show aired for nearly seventeen years. In addition to his work on The Montel Williams Show, Plaintiff has also appeared in acting roles in a number of television programs, plays, and movies.

26.     Williams is known to the public and has obtained celebrity status, and Williams' fame has resulted in invaluable and incalculable good will to the name and trademark Montel Williams.

**The Forbes Article Discusses Williams' Medical Cannabis Position and His Related Business Lenitiv, No CBD Oils Are Endorsed**

27.     Williams is very discerning about the products with which he associates himself.

28.     On or about April 20, 2017, Forbes published the Forbes Article, which described an interview with Williams regarding his experience with MS, treatment of the symptoms with medical cannabis, and his founding of his related business Lenitiv.   Critically, however, Williams never endorsed any CBD Oils.

**Hoping to Capitalize on the Forbes Article, Defendants Make Unauthorized Use of Plaintiffs' Name, Picture, Identity, Persona, Reputation, and Trademarks**

29.     Defendants are unlawfully using Plaintiffs' name, image, identity, reputation, persona, and trademark in a number of ways.   Among other things, Defendants are marketing, or are aware of, encouraging and/or directing marketing, that: uses Williams' name, image, identity, reputation, and persona, and Montel Enterprises' trademark on their websites; purports to be Williams; claim their Infringing Products have been recommended or created by Williams; and/or consists of fake news or blog posts (together, "Defendants' Unlawful Marketing").

30.     For example, some of Defendants' websites have excerpted portions of the Forbes Article, including images of Williams.   However, in addition to copying the content from the Forbes Article, upon information and belief without authorization, Defendants have added completely fabricated quotes and content that they attribute to Williams, which content falsely indicates that Williams is affiliated with and endorses Defendants' Infringing Products.   Links included in these fabricated quotes and content takes users to a webpage to purchase Defendants' Infringing Products, which Williams has never endorsed and with which Williams is not affiliated.     Examples   of   these   fabricated   quotes   and   claims   from   the   website https://www.piop.net/montel-williams-cbd-oil-medicinal-cannabis-lenitivlabs-forbes/          are included below.   The webpage can be viewed in its entirety as attached Exhibit B.



**What Is Montel Williams CBD Oil Product?**

Now available worldwide Pure Isolate CBD is a product of nearly 20 years of research culminating with Montel William's personal investment and lifelong mission. The founder of Pure Isolate CBD, former naval officer, and famed TV host promises to stand by each and every batch of cannabis concentrate his companies produces for medical purposes. He can't rave enough about the positive side effects Pure Isolate CBD users are experiencing.

In a recent interview, Montel explained that the booming cannabis industry has been flooded with various cannabis producers, some of which aren't operating up to the regulatory standards. "We've got a bunch of people growing cannabis that think they're 'garage scientists' who are likely well intentioned but could unknowingly create something that could be harmful to people," he concluded.

"Pure Isolate CBD has been clinically tested over the last decade. I wouldn't sell something I don't personally use myself."

31.    These fabricated quotes and information claim or suggest that Williams specifically endorses or promotes the Infringing Products, and, in the above example, specifically Pure Isolate CBD.  Williams does not endorse or use Pure Isolate CBD, and he is not the founder of Pure Isolate CBD.  The title of that unlawful article, "Find Out More About Montel Williams Weed Medicine CBD Cannabis Oil Lenitivlabs As Seen in Forbes," falsely indicates that the Infringing Product was created by Williams.  Similar false advertisements are posted on other websites such as bonnyin.com/beauty/tips/real-ping-2/index-35.php, attached as Exhibit C.

32.    Similarly, Defendants have also created fake news and blog websites in order to defraud the public, complete with false social media posting and comments purportedly

discussing the fake news.  These websites also falsely attribute quotes and content to Plaintiffs in order to indicate affiliation with and endorsement or use of Defendants' Infringing Products. One such example is a fake news report accessible at the URL https://donationcycle.net/lifestyle newsreport.com/abc/revive-cbd/, which purportedly contains a story reported by Jason Rabois of ABC News.  Upon information and belief, this is not a real news story published by ABC News, and no such reporter works for ABC News.   The website directs visitors to purchase an Infringing Product.  As shown below, the fake news report contains unauthorized images of Williams, along with false endorsements of Defendants' Infringing Products.  A full copy of the fake news report is attached as Exhibit I.



33.     This same fake news is also displayed on other websites such as http://www.easy-essentials-recipes.com/cbd/abc1/, which is attached as Exhibit H.  Williams has never endorsed and does not use Revive CBD Oil.

34.     Upon information and belief, Defendants used social media websites like Facebook and Twitter to widely disseminate their Unlawful Marketing.

35.     Websites containing Defendants' Unlawful Marketing have hyperlinks that bring users to webpages on which they can purchase the Infringing Products or participate in purportedly free trials (the "Sale Websites").  Although these Sale Websites purportedly relate to

different products and are purportedly operated by different companies, they are nearly identical. *Compare* Exhibit A *with* Exhibit D *and* Exhibit E *and* Exhibit F *and* Exhibit G.  Accordingly, upon information and belief, Defendants are the agents, affiliates, partners, and/or alter-egos of one another, and/or are co-conspirators who are acting in concert with each other, and each acted within the course, scope and authority of such relationships so that, as a result, all Defendants are jointly and severally liable for the acts alleged in this Amended Complaint.

36.     Upon information and belief the entities operating the Sale Websites are operated by a single person or entity or are conspiring together in an affiliate marketing scheme to defraud consumers and infringe Plaintiffs' rights and property.  Upon further information and belief, the entities operating the Sale Websites are aware of, encouraged, and/or directed, or otherwise consented to Defendants' Unlawful Marketing of the Infringing Products.  In the alternative, upon information and belief, the entities and individuals operating the Sale Websites have reason to suspect, but have taken deliberate steps to shield themselves from, information that would have made them aware that webpages linking to the Sale Websites were violating Plaintiffs' rights and trademarks.

37.     By Defendants' Unlawful Marketing, Defendants are using Plaintiffs' identity and property without their consent or authorization.  Upon information and belief, Defendants did not seek Plaintiffs' written or oral consent for use of Plaintiffs' identity and property in connection with the Infringing Products because they believed that they would not have received it, and because they wished to profit from this use without paying any compensation to Plaintiffs.

38.     Had their permission been sought, Plaintiffs would have flatly refused to consent to the use of their rights and property in connection with the Infringing Products.

**Defendants' Fraudulent Schemes Directed to the Public**

39.     Defendants' conduct does not stop at deceptively luring customers by unlawfully using Plaintiffs' identity and intellectual property.

40.     Upon information and belief, Defendants are engaging in fraudulent credit card scams.  For example, consumers are promised a free trial, or told they will only incur certain limited charges, but Defendants then charge additional amounts to consumers, without their authorization, after obtaining their credit card account information.  Upon information and belief, Defendants are also engaging in "negative option marketing," whereby consumers are required to automatically opt out of receiving unknown, recurring shipments and charges.   When consumers attempt to reach company representatives in order to cancel their "free" trials, or to reverse or stop charges that the consumer did not agree to pay, they are unable to do so.  Upon information and belief, Defendants also sometimes charge consumers and never send them any Infringing Products.

41.     Upon information and belief, Defendants are also engaging in affiliated marketing programs, whereby they re-route visitors to various websites in order to increase the amount of "click through" revenues they can receive.

42.     Upon information and belief, Defendants deliberately make themselves difficult to detect by failing to properly disclose their contact information, by listing false company information, by using proxies who keep their identity private, by obscuring their proper names and/or by changing their names, and by acting in concert in some other manner and/or as alter egos of each other which make them difficult to distinguish.

**Injuries Due to Defendants' Unlawful Conduct**

43.     Defendants' Unlawful Marketing falsely suggests that Williams endorsed, sponsored and/or was otherwise affiliated or associated with the Infringing Products.  Williams never endorsed or sponsored the Infringing Products.

44.     Defendants' actions are likely to cause, and have caused, confusion.  Defendants' actions have misled the public, which has been and is being led to believe that Williams endorses, sponsors and/or is otherwise affiliated or associated with the Infringing Products, when, in fact, he is not.

45.     In fact, Williams and Lenitiv have already received dozens of complaints from defrauded customers, including from customers in Florida, reflecting their actual confusion and damage to Plaintiffs' reputation due to Defendants' and Unknown Defendants' conduct.  For example, one consumer that ordered CBD Oil from Advanceable wrote to Lenitiv and stated that "[y]our company took money from my bank card and I did not get the product. I sent for the sample of your CBD product . . . [and] I have not received the items.  I am sure that Montel Williams does not want his name associated with a company that takes money and doesn't provide a product."   Williams has received several other consumer complaints regarding Advanceable.

46.     Similarly, Williams has received several similar complaints from consumers who were tricked into purchasing CBD Oils from Emblha LLC.  HGK is the registrant of, among other CBD Oil websites, Emblha.com.  Upon information and belief, Emblha LLC is a pseudonym of HGK.  Williams also received a customer complaint stating that Snowflake was using Williams' image to sell CBD Oils.   That consumer purchased CBD Oil from

skinenchantment.com, which the consumer claims identified Snowflake as the entity selling the CBD Oil.[23]  HGK is also the registrant from skinenchantment.com.

      47.    Other organizations, such as ripoffreport.com, have also received numerous similar complaints, including from customers in Florida.  These reports reflect actual confusion caused by Defendants' unlawful use of Williams' identity and property.[24]

      48.    Defendants' conduct is also particularly damaging to Williams' professional reputation as the founder of Lenitiv.

      49.    Defendants have also caused significant and widespread harm to consumers. Numerous consumers, many of whom are already suffering from serious medical conditions such as leukemia, Alzheimer's, and fibromyalgia have made complaints of Defendants' unlawful credit card charges and the quality of the goods they received.  These complaints have been made, *inter alia,* directly to Plaintiffs and to consumer organizations such as ripoffreport.com.

      50.    Upon information and belief, Defendants' unauthorized health claims also pose significant risk to public health and safety.

---

[23] *See also* https://reportscam.com/advanceabletechnologycom/?page=2#38054 (consumer complaint noting that Snowflake is associated with "Skinenchantment" and Advanceable).

[24] *See, e.g.,* http://www.ripoffreport.com/reports/advance-able-technology-llc/internet/advance-able-technology-llc-may-be-doing-business-as-health-healing-hands-this-was-an-ad-1402430 (consumer complaint noting that a consumer signed up for a free trial of CBD Oil that had been "endorsed by Montel Williams.") (last visited Jan. 23, 2018); *see also* http://www.yscam.com/advanceable-technology-llc-2f (consumer complaining about Advanceable and noting that he or she "[s]aw a Facebook ad sponsored by Montel Williams for CBD oil. You received one bottle and paid for shipping. . . . [The consumer] found charges for $79.99 to be billed monthly to my credit card. . . . These are scammers.") (last visited January 22, 2018); http://www.yscam.com/emblha-llc-07 (consumer complaining about Emblha LLC and noting that he or she is being charged a recurring charge for a purportedly free trial and that he or she only tried the CBD Oil because "Montel Williams the spoke[s]person has a chronic disease MS, a muscle degenerative disease with painful flare ups.") (last visited Jan. 22, 2018); https://reportscam.com/advanceabletechnologycom/?page=2#39152 (consumer complaining about Advanceable stating that the consumer "saw ad on Facebook for CBD oil for pain. Just what Montel Williams uses for his pain.") (last visited Jan. 23, 2018); https://reportscam.com/advanceabletechnologycom/?page=2#39067 (consumer complaining about Advanceable and noting the consumer "ordered two products off the web that stated it was Montel Williams products. Since [the consumer] trust[s] Montel[, he or she] ordered the eno oil and endo balm for approximately $11.00.") (last visited Jan. 23, 2018); https://www.ripoffreport.com/reports/sensuality-licorice-hibiscus-cbd-oil/arizona/sensuality-licorice-hibiscus-cbd-oil-ad-on-twitter-for-new-product-sponsored-by-montel-wi-1423973 (consumer complaining about Emblha and noting that he or she "[r]esponded to advertisement on Twitter for new canabidiol product sponsored by Montel Williams . . . .") (last visited Jan. 23, 2018).

51.     Upon learning about Defendants' wrongful actions, Plaintiffs have undertaken various efforts to stop Defendants' conduct and to stem the harm to consumers, including by sending cease and desist letters and by responding directly to aggrieved consumers that contact Williams or Lenitiv.

52.     Despite these efforts, Defendants continue to violate Plaintiffs' rights and defraud the consuming public.  Upon information and belief, in many instances, upon receiving notice from Plaintiffs of their unlawful conduct, or in response to Plaintiffs' efforts to have infringing materials removed or domain names transferred, many of the Defendants have merely changed the domain names at which the websites reside to avoid detection.

**Timothy Isaac Should be Held Personally Liable**

53.     Upon information and belief, Isaac is the alter ego of Defendants Beauty, Snowflake, HGK, Common Sense, and Advanceable.  Upon information and belief, he is a member or the manager of each of those LLCs.  Additionally, upon information and belief, each of those LLCs has used Defendants' Unlawful Marketing to sell Infringing Products.  Upon information and belief, Defendant Isaac is personally aware of, encouraging, and/or directing Defendants' Unlawful Marketing.  In the alternative, upon information and belief, Isaac has reason to suspect, but is intentionally shielding himself from, information that would have made him aware that his advertising violates Plaintiffs' rights and trademarks.

54.     Upon information and belief, Isaac's use of these nearly identical Unlawful Marketing tactics across each of the Defendant LLCs shows he completely dominates and controls each of those LLCs such that Defendant LLCs are merely a façade for Isaac's individual unlawful conduct, and the separate personalities of the Defendant LLCs and Isaac have ceased to exist.  Notably, each of the LLCs has the same address as a primary place of business and/or for

the statutory agent for service.  Moreover, upon information and belief, Isaac has intermingled the assets of the Defendant LLCs and operates them interchangeably.  For example, Isaac registered the website domain for HGK using a Common Sense email address and his personal email addresses rather than an HGK-specific email address.  Moreover, upon information and belief, Isaac is selling the same Infringing Products through each of the Defendant LLCs. Further, as noted herein, the Better Business Bureau lists Advanceable, HGK, and Beauty Strong as "alternative business names" of Common Sense.

55.     Upon information and belief, Isaac is disregarding the corporate form of Beauty, Snowflake, HGK, Common Sense, and Advanceable in order to confuse and mislead consumers of the Infringing Products and individuals whose image and/or intellectual property was infringed in Defendants' Unlawful Marketing.

56.     Upon information and belief, it is necessary to disregard Snowflake's, Beauty's, Advanceable's, HGK's, and Common Sense's corporate forms and hold Defendant Isaac individually liable in order to prevent injustice and additional harm to Plaintiffs and consumers.

**<u>COUNT I</u>**
**(Direct, Contributory and/or Vicarious False Advertising**
**under Section 43(a) of the Lanham Act)**
**(By Plaintiff Williams)**

57.     Plaintiffs repeat and reallege the allegations stated in the preceding paragraphs of the Amended Complaint as if set forth fully herein.

58.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Williams from the conduct described herein.  Specifically, the Lanham Act prohibits the Defendants, in commercial advertising and promotion, from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of [their] goods, services or commercial activities . . . ." 15 U.S.C. § 1125(a)(1)(B).

20

59.     Defendants, by their false advertising, used Williams' name, picture, marks, and/or identity in interstate commerce, without his consent, as described above, and/or caused, induced, or materially contributed to such use.  Defendants' actions constitute false advertising because they created the perception that Williams endorsed or was otherwise affiliated with the Infringing Products, when that is not the case.

60.     Williams' name, images, and/or identity were recognizable in Defendants' Unlawful Marketing.

61.     Defendants' acts were designed to entice consumers to purchase the Infringing Products.  Defendants' materially false representations were likely to deceive or confuse, and in fact have deceived or confused, the public into believing that Williams  endorses, sponsors, and/or is otherwise affiliated with Defendants' Infringing Products, when that is not the case.

62.     Defendants have availed themselves of the advantages of Williams' extensive efforts, goodwill, and fine reputation, willfully and deliberately, with knowledge of the falsity of their statements, and with the intent to unfairly commercially benefit Defendants at Williams' expense.  Accordingly, this is an exceptional case that warrants the award of attorneys' fees.  For the same reasons, and because the adverse effects on Plaintiffs from Defendants' Unlawful Marketing of the Infringing Products are concrete and not speculative but may avoid precise calculation, Williams is entitled to enhancement of his damages.

63.     In the alternative, Defendants had reason to suspect that their Infringing Products were being sold by means of false advertising that used Williams' name, picture, marks, and/or identity in interstate commerce, without Williams' consent, and they intentionally ignored that information and attempted to shield themselves from discovering the infringing advertisers or advertisements.

21

64.    Williams has been and continues to be irreparably damaged by Defendants' unauthorized false advertising that uses of his name, pictures, marks, and/or identity, including significant damage to his reputation.  Further, upon information and belief, Defendants have derived substantial revenue and profits as a result of their conduct, at Williams' expense.

65.    As a consequence of Defendants' willful misconduct designed to deceive consumers and keep their identities from being discovered, Williams is entitled to injunctive relief; to an award against Defendants in the amount of three times Williams' damages, such amount to be determined at trial; destruction of all infringing materials; and Plaintiffs' costs and, because this is an exceptional case involving willful conduct by the Defendants that harms Plaintiffs and the public, attorneys' fees incurred in connection with this action.

## COUNT II
**(Direct, Contributory and/or Vicarious False Endorsement and Sponsorship, False Designation of Origin, and Unfair Competition under Section 43(a) of the Lanham Act) (By Plaintiff Montel Enterprises)**

66.    Plaintiffs repeat and reallege the allegations stated in the preceding paragraphs of the Amended Complaint as if set forth fully herein.

67.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Montel Enterprises from the conduct described herein.  Specifically, the Lanham Act prohibits the Defendants, in commercial advertising and promotion, from using a name or mark in a way that is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of" good or services.  15 U.S.C. § 1125(a)(1)(A).

68.    Montel Enterprises has a registered trademark in the name Montel Williams.

69.    Defendants' use of the Montel Williams mark, without consent of Montel Enterprises (or Williams), as described above, and/or causing, inducing, or materially

22

contributing to such use, constitutes false designation of origin, false endorsement and sponsorship, and unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

70.     In the alternative, Defendants had reason to suspect that their Infringing Products were being sold by means of the use of the Montel Williams mark without the consent of Montel Enterprises', and they intentionally ignored that information and attempted to shield themselves from discovering the infringing advertisers or advertisements.

71.     By disseminating Defendants' Unlawful Marketing in interstate commerce without authorization, Defendants have falsely represented to the public that Montel Williams endorses, sponsors, and/or is otherwise affiliated or associated with Defendants' goods, services or other commercial activities, when that is not the case.

72.     Defendants' acts were designed to entice consumers to purchase the Infringing Products.  Defendants' materially false representations were likely to deceive or confuse, and have deceived or confused, the public into believing that Montel Williams endorses, sponsors, and/or is otherwise affiliated with Defendants' Infringing Products, when that is not the case.

73.     Defendants have availed themselves of the advantages of Montel Williams' extensive efforts, goodwill, and fine reputation willfully and deliberately, with knowledge of Montel Enterprises' rights, and with the intent to unfairly commercially benefit Defendants at Montel Enterprises' expense.  This is an exceptional case that warrants the award of attorneys' fees.  For the same reasons, and because the adverse effects on Plaintiffs from Defendants' Unlawful Marketing of the Infringing Products are concrete and not speculative but may avoid precise calculation, Montel Enterprises is entitled to enhancement of its damages.

74.     Montel Enterprises has been damaged by Defendants' unauthorized use of the Montel Williams mark.

75.     Upon information and belief, Defendants have derived substantial revenue and profits as a result of their conduct, at Montel Enterprises' expense.

76.     As a consequence of Defendants' willful misconduct designed to deceive consumers and keep their identities from being discovered, Plaintiff is entitled to injunctive relief and to an award against Defendants in the amount of three times Montel Enterprises' damages, such amount to be determined at trial, destruction of all infringing materials, and Plaintiffs' costs and, because this is an exceptional case involving willful conduct by the Defendants that harms Plaintiffs and the public, attorneys' fees incurred in connection with this action.

<u>**COUNT III**</u>
**(Violation of the Right of Publicity and Right of Privacy, Fla. Stat. § 540.08)**
**(By Plaintiff Williams)**

77.     Plaintiffs repeat and reallege the allegations stated in the preceding paragraphs of the Amended Complaint as if set forth fully herein.

78.     Williams is an award winning former daytime talk-show host, who has acted in numerous television programs, plays, and movies.  Williams has devoted significant time and effort developing his career, good will, reputation, and brand.

79.     Williams has a statutory right of publicity under Section 540.08 of the Florida Statutes.

80.     Defendants have violated Williams' statutory right of publicity by publishing, printing, displaying, or publicly using Williams' name, photograph, or other likeness, and/or causing, inducing, or materially contributing to such use, without the express consent of Williams.

81.     Defendants' use was for the purpose of commercial gain related to the Infringing Products, and was designed to associate Williams' identity with the Infringing Products to entice consumers to purchase the Infringing Products.

82.     Defendants had actual or constructive knowledge of the wrongfulness of this conduct but acted with intent or with reckless disregard of Williams' rights and interests.

83.     Williams has been, and continues to be, severely and irreparably damaged by Defendants' unauthorized use of his name, photograph, or other likeness.  Such damages cannot adequately be compensated by money damages.  Accordingly, Williams is entitled to injunctive relief enjoining the use of his identity to market the Infringing Products.

84.     Upon information and belief, Defendants have derived substantial revenue and profits as a result of their conduct, at Williams' expense.  Williams is entitled to recover all such unjustly obtained profits from the commercial exploitation of his image, the amount of which will be ascertained at trial.

85.     As a consequence of Defendants' willful misconduct, Williams is entitled to injunctive relief; damages for Williams' injury, including what would have been a reasonable royalty, in an amount to be determined at trial; and punitive or exemplary damages.

**COUNT IV**
**(Violation of the Common Law Right of Publicity)**
**(By Plaintiff Williams)**

86.     Plaintiffs repeat and reallege the allegations stated in the preceding paragraphs of the Amended Complaint as if set forth fully herein.

87.     Williams is an award winning former daytime talk-show host, who has acted in numerous television programs, plays, and movies.  Williams has devoted significant time and effort developing his career, good will, reputation, and brand.

88.     Williams has a common law right of publicity.

89.     Defendants have violated Williams' common law right of publicity by publishing, printing, displaying, or publicly using Williams' name, photograph, or other likeness, and/or causing, inducing, or materially contributing to such use, without the express consent of the Williams.

90.     Defendants' use was for the purpose of commercial gain related to the Infringing Products, and was designed to associate Williams' identity with the Infringing Products to entice consumers to purchase the Infringing Products.

91.     Defendants had actual or constructive knowledge of the wrongfulness of this conduct but acted with intent or with reckless disregard of Williams' rights and interests. Defendants have continued to violate Williams' publicity rights and property notwithstanding communications requesting that they cease and desist such use.

92.     Williams has been, and continues to be, severely and irreparably damaged by Defendants' unauthorized use of his name, photograph, or other likeness.  Such damages cannot adequately be compensated by money damages.  Accordingly, Williams is entitled to injunctive relief enjoining the use of his identity to market the Infringing Products.

93.     Upon information and belief, Defendants have derived substantial revenue and profits as a result of their conduct, at Williams' expense.  Williams is entitled to recover all such unjustly obtained profits from the commercial exploitation of his image, the amount of which will be ascertained at trial.

94.     Additionally, as a consequence of Defendants' willful misconduct, Williams is entitled to injunctive relief; damages for Williams' injury, including what would have been a reasonable royalty, in an amount to be determined at trial; and punitive or exemplary damages.

26

## <u>COUNT V</u>
**(Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*)**
**(By All Plaintiffs)**

95.     Plaintiffs repeat and reallege the allegations stated in the preceding paragraphs of the Amended Complaint as if set forth fully herein.

96.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

97.     Any person who has suffered a loss from such practices may bring a cause of action under this provision.

98.     Defendants have knowingly utilized unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts and practices in conducting trade or commerce.

99.     Specifically, Defendants have used Plaintiffs' names, pictures, marks, and identities, without their consent, as described herein, and/or caused, induced, or materially contributed to such use, in Defendants' Unlawful Marketing.  Among other things, these acts are unfair and deceptive because they are likely to, and have already, misled consumers into believing that Plaintiffs endorse the Infringing Products, which they do not.

100.     Defendants' Unlawful Marketing constitutes trade or commerce.

101.     Plaintiffs have been damaged by Defendants' unfair and deceptive conduct, including substantial damage to Plaintiffs' reputations.  Specifically, Plaintiffs are aggrieved and has been damaged by Defendants' unauthorized use of their names, photographs, marks, or other likenesses in Defendants' Unlawful Marketing.

102.    As a consequence of Defendants' willful misconduct, Plaintiffs are entitled to injunctive relief, actual damages in an amount to be determined at trial, and attorney's fees and costs, as set forth under FDUTPA.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court grant an order or orders:

A.    Permanently enjoining Defendants, their officers, directors, agents, servants, employees, successors and assigns, and all other persons acting on their behalf or under their control in active concert and participation with any of them, from (a) using Plaintiffs' images, names, voices, identities, personas, reputations, or trademarks to sell or market any product or service in any and all media and forums, or using Plaintiffs' names and trademarks, alone or in combination, in any domain name; and (b) doing any other act likely to cause the public to believe that Defendants' business or services, in any way, originate from, are associated or affiliated with or are sponsored by Plaintiffs; and

B.    Directing Defendants to (a) withdraw all advertising and promotions in any and all media that include the Plaintiffs' images, names, voices, identities, personas, reputations, or trademarks; (b) destroy all advertising, marketing materials and other tangible items that incorporate Plaintiffs' images, names, voices, identities, personas, reputations, or trademarks and provide a certificate of such destruction; (c) transfer any domain names containing Plaintiffs' names or marks to Plaintiffs; and (d) issue a press release and run prominent corrective advertising alerting the public and consumers to the fact that Plaintiffs are not, and never have been, associated with Defendants.

C.    Awarding damages in an amount to be proven at trial, caused by Defendants' Lanham Act violations, unfair competition, and invasion of right of privacy and publicity, and other misconduct as specified herein.

D.      Ordering that Defendants make restitution to Plaintiffs for any unjust enrichment caused by virtue of their unlawful conduct.

E.      Awarding Defendants' profits arising out of Defendants' willful Lanham Act violations, false advertising, false representations, use of false designations of origin, and invasion of right of privacy and right of publicity.

F.      Awarding enhanced damages to be assessed against Defendants and such amount above profits as the court finds just under the Lanham Act, 15 U.S.C. § 1117 and punitive and exemplary damages under the Florida Right of Publicity Act.

G.      Awarding Plaintiffs' interest and costs of this action together with statutory attorneys' fees under the Florida Right of Publicity Act, Fla. Stat. § 540.08, the Lanham Act, 15 U.S.C. § 1117, and the Florida Deceptive and Unfair Trade Practices Act Deceptive Trade Practices Act, Fla. Stat. § 501.201 *et seq.*

H.      Granting such other and further relief as this Court may deem just and proper.


Dated:   Miami, Florida
             February 2, 2018



By:     s/Franklin L. Zemel

             Franklin L. Zemel, Esq.
             SAUL EWING ARNSTEIN & LEHR LLP
             200 E. Las Olas Blvd., Suite 1000
             Fort Lauderdale, FL 33301
             Tel: (954) 713-7610
             Fax: (954) 713-7710

Of Counsel:

DAVIS & GILBERT LLP
Marc J. Rachman (mrachman@dglaw.com)
(*admitted pro hac vice*)

29

Joshua Podolnick (jpodolnick@dglaw.com)
(*admitted pro hac vice*)
Claudia Cohen (ccohen@dglaw.com) (*admitted pro hac vice*)
1740 Broadway
New York, New York 10019
(212) 468-4890

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on February 2, 2018, we electronically filed the foregoing document with the Clerk of Court using its CM/ECF filing system and that service is made, to the parties listed in the attached Service List, under the ECF system and a copy was sent to any party not using the ECF via e-mail.

**SAUL EWING ARNSTEIN & LEHR LLP**
200 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
Tel: (954) 713-7610
Email: franklin.zemel@saul.com


By:  _s/Franklin L. Zemel
        Franklin L. Zemel
        Florida Bar No. 816620

Of Counsel:

DAVIS & GILBERT LLP
Marc J. Rachman (mrachman@dglaw.com)
(*admitted pro hac vice*)
Joshua Podolnick (jpodolnick@dglaw.com)
(*admitted pro hac vice*)
Claudia Cohen (ccohen@dglaw.com) (*admitted pro hac vice*)
1740 Broadway
New York, New York 10019
(212) 468-4890
*Attorneys for Plaintiffs*

**MONTEL WILLIAMS V. ADVANCEABLE TECHNOLOGY, et al**
**USDC Case No. 17-cv-23942-KMW**

**SERVICE LIST**

Franklin L. Zemel
**SAUL EWING ARNSTEIN & LEHR**
*Co-counsel for Plaintiff*
200 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
Tel (954) 713-7610
Email: franklin.zemel@saul.com

Marc Rachman
Joshua Podolnick
Claudia Cohen
**DAVIS & GILBERT LLP**
*Co-counsel for Plaintiff*
1740 Broadway
New York, New York 10019
mrachman@dglaw.com
jpodolnick@dglaw.com
ccohen@dglaw.com

James Williams, Jr.
Jessica Butler
**WILLIAMS LEININGER & COSBY, PA**
11300 US Highway One, Suite 300
North Palm Beach, Florida 33408
Tel: (561) 615-5666
service@wlclaw.com

Jeffrey Smith
**SANDERS & PARKS, PC**
*Counsel for Snowflake Marketing*
3030 North Thrid Street, Suite 1300
Phoenix, Arizona 85012-3099